1 | **DAVID J. LUJAN**
**LUJAN & WOLFF LLP**
2 | Attorneys at Law
DNA Building, Suite 300
3 | 238 Archbishop Flores Street
Hagåtña, Guam 96910
4 | Telephone: (671) 477-8064/5
Facsimile: (671) 477-5297 (LAWS)
5 |
*Attorneys for Plaintiff,*
6 | *S.T.J.*

7 | **IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF GUAM**
8 |

9 | S.T.J.,                                    CIVIL ACTION NO:

10 |                  Plaintiff,
                                            **VERIFIED COMPLAINT FOR DAMAGES**
11 |        v.                                **FOR:**

12 | ROMAN CATHOLIC ARCHBISHOP OF              1. **Child Sexual Abuse**
AGANA, a Corporation sole; BOY SCOUTS         2. **Negligence**
13 | OF AMERICA, a congressionally chartered   3. **Negligent Supervision**
corporation, authorized to do business in     4. **Negligent Hiring and Retention**
14 | Guam; BOY SCOUTS OF AMERICA               5. **Breach of Fiduciary Duty /**
ALOHA COUNCIL CHAMORRO                           **Confidential Relationship**
15 | DISTRICT; LOUIS BROUILLARD, an
individual; DOE ENTITIES 1-5; and DOE-    **JURY TRIAL DEMANDED**
16 | INDIVIDUALS 6-50, inclusive

17 |                  Defendants.

18 |

19 |

20 |        Plaintiff S.T.J. ("S.T.J.") files this Complaint for damages based on prior sexual abuse (the

21 | "Complaint") against Defendants Archbishop of Agana, a corporation sole, Boy Scouts of America, a

22 | congressionally chartered corporation, authorized to do business on Guam, the Boy Scouts of America Aloha

23 | Council Chamorro District, Louis Brouillard, an individual, and DOES 1-50 ("Defendants").

24 |                                  **I.**
                        **JURISDICTION AND VENUE**
25 |

26 |        1.    This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because all

27 | parties are citizens of diverse states and the amount in controversy exceeds $75,000.00 exclusive of interest,

28 | fees, and costs.

2. This Court has personal jurisdiction over this matter because Defendants purposefully availed themselves to the benefit of the laws of this judicial district by regularly transacting and/or conducting business in this state.

3. Venue is appropriate under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, and or a substantial part of property that is the subject of the action is situated.

## II.
## PARTIES

4. At all times relevant hereto, S.T.J. has been and is an individual who resides in Hawaii, but previously lived on Guam during his childhood years. When he was a minor boy, S.T.J. was sexually molested and abused by Louis Brouillard, an ordained priest of the Roman Catholic Archbishop of Agana, and a scoutmaster for the Boy Scouts of America and its Boy Scouts of America Aloha Council Chamorro District. S.T.J. is currently 65-years old. Plaintiff S.T.J. is identified throughout this complaint by his initials in order to protect his privacy.

5. At all times relevant hereto, and upon information and belief, Roman Catholic Archbishop of Agana, a corporation sole, in accordance with the discipline and government of the Roman Catholic Church, is the legal name for Defendant Archbishop of Agana, also known as Archdiocese of Agana. ("Agana Archdiocese"), which is and has been at all times relevant hereto a non-profit corporation organized and existing under the laws of Guam, authorized to conduct business and conducting business in Guam, with its principal place of business in Guam. The Agana Archdiocese is an entity under the control of the Holy See, based in Vatican City, Rome, Italy, and as such constitutes a citizen of a foreign country for purposes of diversity jurisdiction. Agana Archdiocese is responsible and liable in whole or in part, directly or indirectly, for the wrongful acts complained of herein.

6. At all times relevant hereto, and upon information and belief, the Boy Scouts of America ("BSA") was a corporation authorized to do business in Guam, and to this day, BSA regularly transacts business throughout Guam. At all times relevant to this complaint, BSA authorized local councils and local organizations to charter, sponsor, and operate Boy Scout troops throughout Guam, including defendant Boy Scouts of America Aloha Council Chamorro District ("Aloha Council"). The BSA and Aloha Council

2

1    participated in, if not directly controlled, the selections of Scout leaders and troops, and retained and

2    exercised the ultimate authority to decide who could be a Scout troop leader. The BSA and Aloha Council

3    also had the right to control the means and manner of the staffing, operation, and oversight of any Scout

4    troop. In exchange for the use of BSA's name, programming, and endorsement, the leaders and members of

5    the individual Scout troops would pay BSA an annual membership fee. BSA is responsible and liable in

6    whole or in part, directly or indirectly, for the wrongful acts complained of herein.

7         7.    At all times relevant hereto, and upon information and belief, the Aloha Council, which is and

8    has been a non-profit corporation that regularly conducted business in Guam, and acted as an agent of BSA

9    under its direction, supervision, and jurisdiction. Aloha Council is responsible and liable in whole or in part,

10   directly or indirectly, for the wrongful acts complained of herein.

11        8.    The BSA and Aloha Council operate Scouting programs, which invite and seek out the

12   participation of children. The BSA and Aloha Council, through their Scout leaders, employees, servants,

13   officers, volunteers, and / or agents, have control over those activities involving children. BSA has the power

14   to appoint, supervise, monitor, restrict and fire each person working with children within the Boy Scout

15   program.

16        9.    At all times relevant hereto, Defendant Louis Brouillard ("Brouillard"), an individual and an

17   agent of the Agana Archdiocese, was a member of the clergy of the Agana Archdiocese, and a Catholic

18   priest working for the Agana Archdiocese. Brouillard was ordained as a Catholic Priest on December 17,

19   1948 in Guam where he worked in parishes and schools until 1981. During his assignment at the Santa

20   Teresita Catholic Church in Mangilao ("Mangilao Parish"), Brouillard resided at the Mangilao Rectory

21   ("Rectory"). At all times relevant hereto, Brouillard was also an employee, volunteer, and / or agent of the

22   BSA, who worked as a scoutmaster and performed duties for the Aloha Council.  At all times relevant

23   hereto, Brouillard was a resident of Guam and is responsible and liable in whole or in part, directly or

24   indirectly, for the wrongful acts complained of herein. Defendant Brouillard currently resides in the

25   mainland United States.

26        10.   Defendant-entities named herein as DOES 1 - 5, inclusive, are or at all times relevant hereto,

27   were insurance companies that provided general liability coverage and / or excess level liability coverage

28   pursuant to policies issued to the Agana Archdiocese and / or Roman Catholic Church of Guam, the BSA,

3

and the Aloha Council. Defendant-individuals named here-in as DOES 6-50, inclusive, are at all times relevant hereto, were agents, employees, representatives and / or affiliated entities of the Agana Archdiocese and / or Roman Catholic Church, the BSA, and the Aloha Council, whose true names and capacities are unknown to S.T.J. who therefore sues such defendants by such fictitious names, and who will amend the Complaint to show the true names and capacities of each such Doe defendant when ascertained. DOES 6 - 50 assisted, aided and abetted and / or conspired with Brouillard and / or other members of the Agana Archdiocese, the BSA, and / or the Aloha Council to conceal, disguise, cover up, and / or promote the wrongful acts complained of herein. As such, each such Doe is legally responsible in some manner for the events, happenings, and / or tortious and unlawful conduct that caused the injuries and damages alleged in this Complaint.

11. Each defendant is the agent, servant and / or employee of other defendants, and each defendant was acting within the course and scope of his, her or its authority as an agent, servant and / or employee of the other defendants. Defendants, and each of them, are individuals, corporations, alter egos and partnerships of each other and other entities which engaged in, joined in and conspired with the other wrongdoers in carrying out the tortious and unlawful activities described in this Complaint; and defendants, each of them, ratified the acts of the other defendants as described in this Complaint.

### III.
### INTRODUCTORY ALLEGATIONS

**A. Culture of Sexually Predatory Behavior**

12. Since the inception of the priesthood many centuries ago, becoming a Catholic priest has required numerous vows to be taken among them a vow of celibacy, obedience to the laws of both God and society, and a variety of responsibilities that elevated priests, nuns, and entities that utilized the services of priests and nuns, to a high status in the community, which has induced parents to entrust their children to the care of priests and likewise induced children to submit to the commands and will of priests.

13. The creation of the ritual of altar boy service as a component of the Catholic mass and other religious services with the Catholic Church, if not originally conceived as such, ultimately became a tool by which sexually predatory priest would gain access to young boys and such access was disguised in the form of privileged opportunities by which the church invited certain young boys to serve as altar boys, an

4

opportunity that was viewed as a respectable and distinguished role for a young boy in the community and gave the boy status of wearing liturgical apparel during church services and working side by side with the priests.

14. Further disguising the scheme to have sexual access to young boys was the ritual of requiring altar boys to spend the night at the church rectory, ostensibly to facilitate preparation for the following morning church services. By presenting the overnight requests in this manner, priests routinely gained the approval of parents; and often times the sexual abuses occurred during the night in their beds at the priests' residences. These seemingly routine practices of having altar boys stay overnight served the predatory priests with a steady supply of victims under the auspices and pretense of formal church protocol, which allowed the church to continually operate a veritable harem of young boys who were readily available to pedophiles who utilized the stature of the church into deceiving the community to regard them as high-level officials.

15. The systematic and ongoing pattern of sexual abuse of young children was characteristic of an internal society within Defendant Agana Archdiocese and whose norms were based on pedophilic conduct disguised by the rituals and pageantry of liturgical services, together with the aura of prestige that was inculcated in the community and which caused Catholic parishioners to place the highest level of confidence and trust in the church and its clergy. This internal society of sexual corruption sustained itself through a conspiratorial arrangement between priests and higher officials in the Agana Archdiocese whereby they all understood and agreed to remain quiet about each others sexual abuse misconduct, to tolerate such misconduct, and to withhold information about such misconduct from third parties including victims' parents or guardians and law enforcement authorities, in order to protect the offenders and the Agana Archdiocese, thereby placing their loyalty above their duty to protect the minor children and their legal responsibilities.

16. Although BSA was originally conceived in the early twentieth century out of a philosophy of good will aimed at promoting the healthy development of young boys, the Catholic Church developed and maintained a relationship with BSA in Guam by which pedophilic priests exploited the opportunity to serve as scoutmasters for the specific purpose of having access to young boys. As alleged herein, this relationship between BSA, the Aloha Council and the Catholic Church resulted in numerous instances of sexual abuse and molestation which were committed willfully by individual priests and were allowed to occur due to the gross negligence and recklessness of the Agana Archdiocese, the BSA, and the Aloha Council, which failed

5

to properly oversee and manage this relationship between the entities as alleged in more detail herein. BSA and the Aloha Council were willing to overlook and ignore the sexually predatory conduct of Catholic priests on Guam as part of a symbiotic relationship between the entities by which BSA and the Aloha Council gained monetary revenues through the enrollment of young boys, and priests gained access to boys to act out sexually abusive and predatory behaviors.

17. The sexually abusive practices arising out of the relationship between BSA, the Aloha Council, and the Agana Archdiocese were another extension of the internal culture of sexual corruption and abuse that characterized the Agana Archdiocese in Guam.

18. These sexually predatory norms were an integral part of the standards and culture generated by the central authority of the Roman Catholic Church based in Vatican City, Italy, which closely controlled the operations of the Agana Archdiocese, and which aided and abetted such sexually predatory and abusive practices by priests by knowingly tolerating such actions, failing to manage the Agana Archdiocese to prevent sexual misconduct, and engaging in actions to protect and shield priests through such policies as transfers to other jurisdictions, maintaining an internal code of silence, and choosing to remain willfully blind to the ongoing sexual misconduct committed by Catholic priests.

19. These sexually predatory norms were also an integral part of the long-term relationship between the Agana Archdiocese and BSA which fostered an environment conducive to the sexual abuse of young boys on Guam by encouraging priests to serve as Scout leaders and exploiting the trust placed in the church by the community of Guam such that parents willingly enrolled their young sons as Boy Scouts and entrusted them to the priest-scout leaders during scouting events and overnight outings, while the Agana Archdiocese and BSA tolerated and remained willfully blind to the rampant sexual abuse that was perpetrated on an ongoing basis.

**B. Sexual Abuse Inflicted on Plaintiff S.T.J.**

20. From about 1963 through 1964, around the ages of ten (10) through eleven (11) years old, S.T.J. was an altar boy for the Mangilao Parish. During this time Brouillard was a priest at the Mangilao Parish, and was also an employee, volunteer, and / or agent of the BSA, who worked as a scoutmaster and performed duties for the Aloha Council, and would sometimes use weekly outings to recruit young boys to become altar boys or join the Boy Scouts.

6

21. During the period of two years in which he served as an altar boy, S.J.T. was sexually molested and raped by Brouillard, two to three times a week

22. To achieve his sexually predatory objectives, Brouillard used various strategies to gain access to S.T.J. and other young boys and to induce their compliance, as part of his evil campaign to sexually abuse them. For example, on several occasions, Brouillard required S.T.J. to spend the night at the Rectory and sought and obtained permission from S.T.J.'s parents to have S.T.J. spend the night using as an excuse that he did not want S.T.J. to be late to serve the next day as an altar boy during early morning masses. S.T.J.'s parents were deceived by Brouillard's request for an overnight stay because the parents, like the Catholic community at large on Guam, had been inculcated by a deep-seeded trust in the Catholic Church. S.T.J.'s parents gave consent without the slightest of doubt, not realizing that they were sending S.T.J. to be sexually abused by a predator disguised in the robes of the clergy. While at the Rectory, S.T.J. would be subjected to the presence of Brouillard walking around completely naked and S.T.J. would also be forced to sleep naked. During S.T.J.'s overnight stay at the Rectory, Brouillard sexually molested and abused S.T.J. by fondling, masturbating, and penetration S.T.J. S.T.J. was also forced to fondle, masturbate, and perform oral copulation on Brouillard.

23. Brouillard's sexually predatory practices extended to his service as a scoutmaster for the BSA and the Aloha Council, in which he conducted weekly outings and would take S.T.J. and some of the boys swimming. On numerous occasions, while swimming, Brouillard would swim completely naked and routinely instructed S.T.J. and the other boys to remove their clothes, and Brouillard would grope and touch their private parts while swimming.

24. S.T.J. recalls Brouillard picking him up at his house to go swimming. Bouillard fit about 8 boys in his Volkswagen, some boys even S.T.J. would have to ride in the trunk.

25. Brouillard frequently went to S.T.J.'s house to look for S.T.J. On several occasions, as soon as S.T.J. heard Brouillard's Volkswagen driving up, S.T.J. would run and hide. S.T.J.'s parents would usually scold and punish S.T.J. whenever he did this.

26. Upon information and belief, other priests and representatives of the Agana Archdiocese, including Bishop Apollinaris Baumgartner, Archbishop Anthony S. Apuron, Monsignor Zoilo Camacho, now-deceased Father Antonio C. Cruz, and individuals named herein as Doe defendants, were aware of the

7

sexual abuse committed by Brouillard and deliberately remained quiet and withheld such information from third parties including victim's parents or guardians and law enforcements authorities, in order to protect Brouillard and the Agana Archdiocese, thereby placing their loyalty above their duty to protect the minor children and their legal responsibilities.

27.  Upon information and belief, the BSA and Aloha Council knew of or should have known that Brouillard was a sexual predator of young boys before he sexually abused S.T.J. because Brouillard had been committing acts of sexual molestation as a Boy Scout leader for approximately at least two decades prior to molesting S.T.J. It was well-known for years that Brouillard used his positions as a scoutmaster to take boys swimming in the nude and to sexually molest Scout campers during overnight and day trips.

28.  BSA has had a long history of sexual molestation and abuse of young boys, that has been documented extensively both in the media and through numerous civil and criminal litigations through out the United States. There have been numerous Scout leaders that have been sentenced in criminal prosecution for acts of sexual molestation of minor boys. As a general reference the following Internet links can be viewed online:

> *https://en.wikipedia.org/wiki/Boy_Scouts_of_America*
>
> *https://en.wikipedia.org/wiki/Boy_Scouts_of_America_sex_abuse_cases*
>
> *https://www.theguardian.com/world/2010/apr/29/boy-scouts-sexual-abuse-dykes*
>
> *http://www.thenationaltriallawyers.org/2015/03/boy-scout-abuse/*
>
> *http://www.reuters.com/article/us-usa-boyscouts-abuse-idUSBRE89H0ZF20121018*

29.  Upon information and belief, the BSA and Aloha Council had been notified regarding Brouillard's acts of sexual molestation. The BSA and Aloha Council had known since the early 1920s that men like Brouillard were using their positions as scoutmasters to groom and sexually abuse Boy Scouts.

30.  Founded in 1910, the BSA is one of the largest youth organizations in the United States with millions of members. Throughout BSA's history, it has consistently held itself out to the public as a "moral and safe" environment for boys to participate in healthy outdoors activities and to be given proper guidance and instructions. Millions of parents and Scouts have placed their trust in the BSA. An estimated 20% of American boys have had contact with Scouting either as members or attending Boy Scout activities.

8

31. Upon information and belief, shortly after its inception, the BSA became aware that a significant number of its adult Scout leaders, employees, servants, officers, volunteers, and / or agents were using their position of trust and authority to manipulate and sexually abuse young boys participating in the BSA's Scouting program.

32. Surprisingly, the BSA still continued to promote the safety, trustworthiness, and wholesomeness of its program, even though it has been secretly removing scoutmasters for child sexual abuse at an alarming rate since the 1920s. Its own records demonstrate that the BSA has long-known yet concealed from its members, Scouts, and Scouts parents that Scouting attracts pedophiles in large numbers and that Scouts, far from being safe, are at heightened risks of sexual abuse by child molesters. The BSA misrepresented to members, Scouts and Scouts parents that the Scouts were safe in Scouting programs, and made this misrepresentation to S.T.J. and S.T.J.'s parents.

33. In approximately 1920s, the BSA created and maintained a highly confidential file system that is often referred to as the "Ineligible Volunteer" files. The purpose of the Ineligible Volunteer files was to identify Scout leaders, employees, servants, officers, volunteers, and / or agents of the BSA who were considered "ineligible" to hold positions as a Scout leader, who posed a danger to children because of a variety of moral offenses and who were declared unfit to volunteer. One of those moral offenses was "perversion" with children. The most common reason for Scout leaders, employees, servants, officers, volunteers, and / or agents of the BSA to be placed in the Ineligible Volunteer files has been allegations of sexual abuse of boys. The majority of the cases on file are perversion cases, and the BSA has referred to the subset of Ineligible Volunteer files as the "Perversion Files".

34. Upon information and belief, between 1965 and 1985, at least 1,200 "perversion" files were created for Scout leaders, employees, servants, officers, volunteers, and / or agents of the BSA who had molested one or more children. There was an average of more than one new child molester a week, and many of these volunteers molested multiple Scouts and other boys. The BSA knew that not all molesters in Scouting were caught each year, particularly because some of the molesters were shown to have abused Scouts and other boys for several years before detection.

35. The BSA went to significant lengths to keep the existence of their Perversion File system and the problem of pedophiles Scout leaders a secret from its member, Scouts, and Scouts families. Upon

9

information and belief, local councils, like the Aloha Council, were instructed, and agreed, not to keep Perversion Files at their offices, but rather to send everything to the BSA National Office. This was a material risk that was unique to the Boy Scout program and was not something that S.T.J., S.T.J.'s parents / or guardians, or the general populations knew existed.

36. At some point in or about 1971, the Aloha Council was aware or should have been aware that scoutmasters within the Aloha Council posed a danger of sexually abusing Boy Scouts. Aloha Council gained this knowledge through reports of sexual abuse by scoutmasters operating within the Aloha Council's geographic boundaries.

37. For example, in or about 1971 or 1972, the Chamorro Council Scout Executive, Roger D. Pelz, reported that the assistant scoutmaster of Troop 32, David Joseph Ellington, initiated sexual contact with two minor boys at the U.S. Coast Guard Naval Station in Guam. Mr. Ellington subsequently left the area and relocated to Phoenix, Arizona, where he attempted to re-enroll in the BSA as a Scout leader, employee, servant, officer, volunteer, and / or agent.

38. Despite knowing that more than a thousand men like Mr. Ellington had used their positions in the BSA to groom and to sexually abuse children, the BSA and Aloha Council never warned S.T.J., S.T.J., S.T.J.'s parents / or guardians, or other children about the danger of sexual abuse in Scouting.

39. Prior to the sexual molestation and abuse of S.T.J., BSA knew or should have known that its Ineligible Volunteer Files and Perversion Files system did not function as it was intended, was flawed, and in many cases ineffective to address the sustained problem of sexual abuse of young boys by Scout leaders, employees, servants, officers, volunteers, and / or agents of BSA. Despite that knowledge, BSA did nothing to educate its members, Scouts and Scouts parents of the ineffectiveness of the screening and tracking system and process. BSA did nothing to educate or inform members, Scouts and Scouts parents of the enormity of the pedophile problem, nor did BSA take action to correct its screening and / or education system.

40. Instead, the BSA and its local councils, including the Aloha Council intentionally and actively concealed the continuous and systematic danger of sexual abuse of boys in their programs by Scout Leaders. The BSA and Aloha Council also actively promoted and represented to the public that their Scouting programs were safe and wholesome and their Scout Leaders were safe and trustworthy.

41. The BSA and Aloha Council knew that Scouting, a closed system over which the Boys Scouts held exclusive control related to participation and access, was and still continues to be used by child molesters to gain access to and the trust of Scouts, other boys, their families and the community. The BSA and Aloha Council knew the majority of boys were abused during one-on-one situations, and that S.T.J., S.T.J.'s parents and / or guardians and the families of other Boy Scouts would consider this to be a material risk. Nevertheless, the BSA and Aloha Council did nothing to warn S.T.J., S.T.J.'s parents / or guardians or any of the other Boy Scouts or their parents and / or guardians of the risks of molestation by Scout leaders, employees, servants, officers, volunteers, and / or agents of BSA, and the BSA did nothing to change the Boy Scout program prior to the representations and omission they made to S.T.J., S.T.J.'s parents and / or guardians, or any of the other Boy Scouts or their parents and / or guardians regarding Brouillard. Instead, the BSA continued to make the same representations and omission to S.T.J., S.T.J.'s parents and / or guardians, or any of the other Boy Scouts or their parents and / or guardians, knowing they were false and knowing they were being relied upon by them.

42. The BSA and Aloha Council made these representations and omissions with the intent of inducing S.T.J., S.T.J.'s parents and / or guardians, or any of the other Boy Scouts or their parents and / or guardians, to rely on these representations and omissions so they would continue to trust the BSA, Aloha Council, and Brouillard and continue to pay to participate in Scouting.

43. The BSA and Aloha Council knew that if they revealed the truth, their revenues would sharply decrease, they would lose their prestige and reputation as a "safe program for boys", and they would likely face liability for the thousand of boys who had already been sexually abused by Scout leaders, employees, servants, officers, volunteers, and / or agents of the BSA.

44. For example, upon information and belief, on or about December 4, 1972, BSA's Executive Director of Registration and Subscription Services, Paul I. Ernst ("Ernst"), sent a "personal and confidential" letter from the BSA's national headquarters to "all Scout executives" with the subject "Maintaining Standards of Leadership." In the letter, Ernst informed his Scout executives that he was enclosing guidelines that were "carefully developed" by the BSA, but "because of the misunderstandings which could develop if it were widely distributed," he instructed them to avoid sharing it "beyond the top management of your council". The memorandum outlined the manner in which local councils should report accusations, however

urges that the policy be kept confidential, advises BSA staff to tell unfit leaders that their actions would not be reported to anyone including law enforcement, and states that in some instances, the BSA is even willing to re-admit leaders whose named have been included in the confidential files.

45.    Upon information and belief, in another letter from Ernst to a local council executive, dated on or about December 15, 1981, regarding a reported sexual predator Ernst wrote, "We have always asked that all the records in this type of situation be kept in the national office and not in the local council office because of the embarrassment that could be incurred if the wrong individuals would read the file."

46.    The BSA's existing policies and procedures were not working to protect the boys from being sexually abused by Scout leaders, employees, servants, officers, volunteers, and / or agents of the BSA. Despite knowing that their policies were insufficient, the BSA and Aloha Council did nothing to warn S.T.J., S.T.J.'s parents and / or guardians, or any of the other Boy Scouts or their parents and / or guardians of that danger. Instead, they kept representing that the BSA program was completely safe and its Scout leaders, employees, servants, officers, volunteers, and / or agents were completely safe. Although BSA eventually changed its policies and procedure, it did so after it was too late to protect S.T.J.

47.    In or about 2012, the BSA was forced by court order to release over 20,000 pages of documentation on about 1,200 alleged child sex abuse cases within the organization, covering the time period from approximately 1965 to 1985.

48.    The BSA and Aloha Council continues to make false and misleading public statements regarding the risks of sexual abuse in Scouting; continues to minimize and downplay the harm of sexual abuse to children in Scouting; fails to reach out to provide support and assistance to boys it knows were sexually abused by adult Scout Leaders; and continues to deny the truth about its historical knowledge of the nature and extent of sexual abuse of scouts by adult Scout leaders; and fails and refuses to take any responsibility for their gross negligence for hiring, retaining, or engaging in the services of pedophiles.

C. Louis Brouillard's Confession

49.    During the period of July 2016 thru September 2016, Brouillard met on several occasions with an investigator retained by Plaintiff's counsel, in the course of which Brouillard made several admissions regarding his past sexual abuse of minor boys while serving in both his capacities as a priest and scoutmaster for Guam.

12

50.   As a follow up to the meetings with the investigator, on or about October 03, 2016, Brouillard signed a statement admitting to sexually abusing at least twenty (20) boys, a true and accurate copy of Brouillard's statement is attached hereto as Exhibit "1". While the statement contains admissions, it also contains remarks that seek to minimize the misconduct as reflected in the excerpts below:

    a.   "My name is Father Louis Brouillard. I am a retired Roman Catholic priest. … I served the diocese of Guam in the 1940s through 1970s and held many positions in the church. "

    b.   "Looking back now, I realize that I crossed the line with some of my actions and relationship with the boys.

    c.   "During some of the sex education talks, while at Santa Teresita, I did touch the penises of some of the boys and some of the boys did perform oral sex on me. Some of the incidents took place in Mangilao at the rectory of the Santa Teresita Church. Because of the many years that have passed, I do not remember the exact dates and times or the names of the boys involved. There may have been 20 or more boys involved. Other locations where the sexual contact may have happened would be at San Vicente and Father Duenas Memorial Schools.

    d.   "At that time, I did believe that the boys enjoyed the sexual contact and I also had self gratification as well."

    e.   "I have come to learn the name of one of the boys I had sexual contact with at the Santa Teresita rectory. His name is Leo Tudela. … I apologize to you Leo and the rest of the boys that I may have harmed. I regret with all my heart any wrong I did to them. I pray for all the boys I may have harmed and ask for their forgiveness from God."

    f.   "While in Guam my actions were discussed and confessed to area priests as well as Bishop Apollinaris Baumgartner who had approached me to talk about the situation. I was told to try to do better and say prayers as a penance."

    g.   "I believe the Catholic Church should be honest and truthful regarding what happened on Guam during my time there."

51.   At all times relevant hereto, Brouillard sexually abused and molested S.T.J. when S.T.J. was a minor and committed such acts while serving as a priest in the Mangilao Parish, in both of his capacities as an agent and employee of the Agana Archdiocese, and / or while working as a scoutmaster for the BSA and Aloha Council, which are vicariously liable for his actions.

52.   The Agana Archdiocese, BSA, Aloha Council, and DOES 1-50, inclusive, knew that Brouillard had sexually abused and molested S.T.J., and rather than reporting the matter to law enforcement and without intervening so as to prevent Brouillard from engaging in additional instances of sexual abuse, and without seeking to have Brouillard acknowledge and take responsibility for his wrongful actions, they

13

assisted Brouillard with the specific purpose or design to keep Brouillard's misconduct hidden and secret; to hinder or prevent Brouillard's apprehension and prosecution; and to protect the BSA, Aloha Council, Agana Archdiocese, as well as the Roman Catholic church as an international institution. Such tactics included paying Brouillard a monthly stipend for many years up until this time, despite being rendered inactive as a priest.

53. To this day, the Agana Archdiocese, BSA, Aloha Council, and DOES 1-50 never contacted S.T.J., S.T.J.'s family, or children they know Brouillard had sexual contact with. The Agana Archdiocese, BSA, Aloha Council, and DOES 1-50 have been content that any other children that were sexually abused by Brouillard while he was serving as a priest and / or scoutmaster, will remain affected by guilt, shame and emotional distress.

54. Despite the prolonged and egregious sexual abuse, spanning a period of several decades, neither the BSA, Aloha Council, Agana Archdiocese nor the Roman Catholic Church ever formally disciplined Brouillard.

55. In fact, the Agana Archdiocese have paid and continued to pay up through present time, sums of money to Brouillard on a regular basis, ostensibly under the guise of a retirement stipend. Brouillard's name was included on a list released by the Duluth diocese in December 2013 of priests who had been credibly accused of sexual abuse of young persons while serving in the diocese. In fact, and not withstanding the above, on information and belief, the Archdiocese has hired an attorney to represent Brouillard in these cases.

56. The criminal offense of Child Abuse is defined in 9 GCA § 31.30, which states in pertinent part as follows:

    (a) A person is guilty of child abuse when:
        (1)    he subjects a child to cruel mistreatment; or
        (2)    having a child in his care or custody or under his control, he:
                *      *      *
        (B) subjects that child to cruel mistreatment; or
        (C) unreasonably causes or permits the physical or, emotional
            health of that child to be endangered

57. Under 19 GCA § 13101, the following relevant definitions are provided:

                *      *      *
    (b) Abused or neglected child means a child whose physical or mental health or
        welfare is harmed or threatened with harm by the acts or omissions of the
        person(s) responsible for the child's welfare;
                *      *      *

14

(d) Child means a person under the age of 18 years;

        \*      \*      \*

(t) Harm to a child's physical health or welfare occurs in a case where there exists evidence of injury, including but not limited to:

        \*      \*      \*

(2) Any case where the child has been the victim of a sexual offense as defined in the Criminal and Correctional Code; or

(3) Any case where there exists injury to the psychological capacity of a child such as failure to thrive, extreme mental distress, or gross emotional or verbal degradation as is evidenced by an observable and substantial impairment in the child's ability to function within a normal range of performance with due regard to the child's culture(.)

58. Under 9 GCA § 25A201, "sexual conduct" with a minor is defined as follows:

(o) Sexual Conduct means acts of sexual penetration, sexual contact, masturbation, bestiality, sexual penetration, deviate sexual intercourse, sadomasochistic abuse, or lascivious exhibition of the genital or pubic area of a minor.

59. Under 9 GCA § 25.10(8), "sexual contact" is defined as follows:

(8) Sexual Contact includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification.

60. Under 9 GCA § 25.10(9), "sexual penetration" is defined as follows:

(9) Sexual Penetration means sexual intercourse, cunnilingus, fellatio, anal intercourse or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emissions see is not required.

61. Under 9 GCA § 25.15 the crime of First Degree Criminal Sexual Conduct with regard to a child is set forth in pertinent parts as follows:

(a) A person is guilty of criminal sexual conduct in the first degree if the person engages in sexual penetration with another person and if any of the following circumstances exists:
(1) that other person is under fourteen (14) years of age;
(2) that other person is at least fourteen (14) but less than sixteen (16) years of age and the actor is a member of the same household as the victim, or is related by blood or affinity to the fourth degree to the victim, or is in a position of authority over the victim and the actor used this authority to coerce the victim to submit.

//

//

//

15

62. Under 9 GCA § 25.20, the crime of Second Degree Criminal Sexual Misconduct with regard to a child is set forth in pertinent part as follows:

(a) A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists:
(1) that other person is under fourteen (14) years of age;
(2) that other person is at least fourteen (14) but less than sixteen (16) years of age and the actor is a member of the same household as the victim, or is related by blood or affinity to the fourth degree to the victim, or is in a position of authority over the victim and the actor used this authority to coerce the victim to submit.

63. Under 9 GCA § 28.65, the crime of Indecent Exposure is set forth in pertinent part as follows:

A person is guilty of indecent exposure if he exposes his genitals or performs any other lewd act under circumstances in which his conduct is likely to be observed by any person who would be offended or alarmed.

64. Under 19 GCA § 13201(b), the following are required to report child abuse:

(b) Persons required to report suspected child abuse under Subsection (a) include, but are not limited to, … clergy member of any religious faith, or other similar functionary or employee of any church, place of worship, or other religious organization whose primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship, …

## IV.
## FIRST CAUSE OF ACTION

### Child Sexual Abuse
### [Against Defendant Brouillard]

65. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 64 of this Complaint as if fully set forth herein.

66. Brouillard committed the offense of First Degree Criminal Sexual Misconduct, as set forth in 9 GCA § 25.15, by engaging in sexual penetration with S.T.J. when S.T.J.. was under fourteen (14) years of age.

67. Brouillard committed the offense of Second Degree Criminal Sexual Misconduct, as set forth in 9 GA § 25.20, by engaging in sexual contact with S.T.J. when S.T.J. was under fourteen (14) years of age.

68. Brouillard committed the offense of Indecent Exposure, as set forth in 9 GCA § 28.65, when he exposed his genitals in the presence of S.T.J. in which his conduct offended and alarmed S.T.J., in his position as a priest and / or scoutmaster.

16

69. Brouillard committed the offense of Child Abuse, as set forth in 9 GCA § 31.30, in his position as a priest and / or scoutmaster, by subjecting S.T.J. to cruel mistreatment, including but not limited to having S.T.J., who was a child at the time pursuant to 19 GCA § 13101(d), under his care, custody or control, unreasonably caused or permitted the physical or emotional health of the child to be endangered.

70. As a direct and proximate consequence of Brouillard's misconduct, in his position as a priest and / or scoutmaster, S.T.J. was an abused or neglected child within the meaning of 19 GCA § 13101(b) because his physical or mental health or welfare was and continues to be harmed by the acts or omissions of Brouillard, who was responsible for the child's welfare. Moreover, as Brouillard's misconduct constitutes the commission of one or more criminal offenses, S.T.J. has suffered harm to a child's physical health or welfare within the meaning of 19 GCA § 13101(t)(2) because S.T.J. was the victim of a sexual offense as defined in the Criminal and Correctional Code (9 GCA).

71. As a direct and proximate consequence of Brouillard's misconduct, in his position as a priest and / or scoutmaster, S.T.J. has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and have incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

72. By engaging in the conduct described herein, in his position as a priest and / or scoutmaster, Brouillard acted with malice, oppression, and/or fraud, entitling S.T.J. to exemplary and punitive damages.

**V.**
**SECOND CAUSE OF ACTION**

**Child Sexual Abuse**
**[Against Defendants Agana Archdiocese, BSA, Aloha Council, and DOES 1 – 50]**

73. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 72 of this Complaint as if fully set forth herein.

74. Defendants Agana Archdiocese, BSA, Aloha Council, and DOES 1 - 50 (collectively "Defendants" as alleged in this cause of action) are vicariously liable for the sexual abuse committed upon S.T.J. by Brouillard. Public policy dictates that Defendants should be held responsible for Brouillard's wrongful conduct under the theory commonly referred to as *Respondeat Superior*.

75. For the reasons set forth in the incorporated paragraphs of this Complaint, the sexual abuse of S.T.J. arose from and was incidental to Brouillard's employment with, or service on behalf of the Agana Archdiocese, the BSA, and its Aloha Council, and while Brouillard was acting within the scope of his employment with the Agana Archdiocese and / or service on behalf of the BSA or its Aloha Council, at the time he committed the acts of sexual abuse, which were foreseeable to Defendants.

76. Defendants ratified and / or approved of Brouillard's sexual abuse by failing to adequately investigate, discharge, discipline and / or supervise Brouillard and other priests, Scout leaders, employees, servants, officers, volunteers, and / or agents known by Defendants to have sexually abused children, or to have been accused of sexually abusing children; by concealing evidence of Brouillard's sexual abuse both as a priest and as a scoutmaster; failing to intervene to prevent ongoing and / or further sexual abuse; by failing to report the sexual abuse as required under 19 GCA 13201(b); by allowing Brouillard to continue in service as a Catholic priest working for the Agana Archdiocese and as a scoutmaster for the BSA and its Aloha Council.

77. Despite the pretense of policies and procedures to investigate and address instances of child sexual abuse by priests working for the Agana Archdiocese, and serving as Scout leaders on behalf of the BSA and the Aloha Council, as well as their employees, servants, officers, volunteers, and / or agents. Defendants in fact implemented such policies and procedures for no other purpose than to avoid scandal, maintain secrecy and preserve loyalty to fellow clergy of the Agana Archdiocese, and serving as Scout leaders on behalf of the BSA and the Aloha Council, as well as their employees, servants, officers, volunteers, and / or agents, including child molesting clergy working for the Agana Archdiocese, and / or serving as Scout leaders on behalf of the BSA and the Aloha Council, rather than the protection of children. Such hypocritical conduct by Defendants has served to systematically encourage, perpetuate and promote sexually abusive conduct by priests both in their role as clergy for the Agana Archdiocese, and as Scout Leaders for the BSA and the Aloha Council.

78. Defendant Agana Archdiocese either had actual knowledge of Brouillard's sexual abuse of numerous other minors whom Brouillard victimized, or could have and should have reasonably foreseen that Brouillard was committing and would commit sexual abuse of other minors. Such knowledge included direct awareness by former Agana Bishop Apollinaris Baumgartner, as reflected in the following excerpt from

1  Brouillard's statement attached hereto as Exhibit "1":

2           "While in Guam my actions were discussed and confessed to area
           priests as well as Bishop Apollinaris Baumgartner who had approached me
3          to talk about the situation. I was told to try to do better and say prayers as a
           penance."

4

5      79.  Defendants BSA and its Aloha Council either had actual knowledge of Brouillard's sexual

6  abuse of numerous other minors whom Brouillard victimized, or could have and should have reasonably

7  foreseen that Brouillard was committing and would commit sexual abuse of other minors. To date BSA has

8  acknowledged that Brouillard victimized minor boys while serving as a scoutmaster, as reflected in the

9  excerpts taken from an interview with Jeff Sulzbach, the chief executive officer of the Boy Scouts of

10 America Aloha Council on March 5, 2017, attached hereto as Exhibit "2":

11          "Upon learning of the reports, we took immediate action to
           preclude individual (Brouillard) from any further participation in the
12         scouting program." Though Sulzbach couldn't say when exactly the Boy
           Scouts became aware of the reports of Brouillard's sexual abuse of children
13         on Guam, he said it was possible that the organization didn't take action
           against priest until sometime after the 1970s.

14

15     80.  As a direct and proximate result of the Defendants' above – described conduct, S.T.J. has

16 suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical

17 manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of

18 enjoyment of life; and has incurred and / or will continue to incur expenses for medical and psychological

19 treatment, therapy and counseling.

20     81.  By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or

21 fraud, entitling S.T.J. to exemplary and punitive damages.

22                                    **VI.**
                            **THIRD CAUSE OF ACTION**

23                               **Negligence**
24                         **[Against All Defendants]**

25     82.  Plaintiff re-alleges and incorporates by reference paragraphs 1 through 81 of this Complaint as

26 if fully set forth herein.

27     83.  Defendants Brouillard, Agana Archdiocese, BSA, Aloha Council, and DOES 1 - 50

28 (collectively "Defendants" as alleged in this cause of action) had a duty to protect S.T.J. when he was

                                       19

1    entrusted to Brouillard's care by S.T.J.'s parents. S.T.J.'s care, welfare, and / or physical custody were

2    temporarily entrusted to Defendants, and Defendants accepted the entrusted care of S.T.J. As such,

3    Defendants owed S.T.J., as a child at the time, a special duty of care, in addition to a duty of ordinary care,

4    and owed S.T.J. the higher duty of care that adults dealing with children owe to protect them from harm.

5        84.   By virtue of his unique authority and position as a Roman Catholic priest and / or a

6    scoutmaster, Brouillard was able to identify vulnerable victims and their families upon which he could

7    perform such sexual abuse; to manipulate his authority to procure compliance with his sexual demands from

8    his victims; to induce the victims to continue to allow the abuse; and to coerce them not to report it to any

9    other persons or authorities. As a priest and / or a scoutmaster, Brouillard had unique access to a position of

10   authority within Roman Catholic families and / families that were actively involved in activities sponsored

11   by the BSA and its Aloha Council, like the family of S.T.J. Such access, authority and reverence was known

12   to the Defendants and encouraged by them.

13       85.   Defendants, by and through their agents, servants and employees, knew or reasonably should

14   have known of Brouillard's sexually abusive and exploitative propensities and / or that Brouillard was an

15   unfit agent. It was foreseeable that if Defendants did not adequately exercise or provide the duty of care

16   owed to children in their care, including but not limited to S.T.J., the children entrusted to Defendants' care

17   would be vulnerable to sexual abuse by Brouillard.

18       86.   Defendants breached their duty of care to the minor S.T.J. by allowing Brouillard to come into

19   contact with S.T.J. as a child without supervision; by failing to adequately supervise, or negligently retaining

20   Brouillard whom they permitted and enabled to have access to S.T.J.; by failing to properly investigate; by

21   failing to inform or concealing from S.T.J.'s parents, guardians, or law enforcement officials that Brouillard

22   was or may have been sexually abusing minors; by holding out Brouillard to S.T.J.'s parents or guardians,

23   and to the community of Guam at large, as being in good standing and trustworthy as a person of stature and

24   integrity. Defendants cloaked within the facade of normalcy Brouillard's contact with S.T.J. and / or with

25   other minors who were victims of Brouillard, and deliberately concealed and disguised the sexual abuse

26   committed by Brouillard.

27       87.   As a direct and proximate result of the Defendants' above – described conduct, S.T.J. has

28   suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical

20

manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and have incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

88.  By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling S.T.J. to exemplary and punitive damages.

## VII.
## FOURTH CAUSE OF ACTION

**Negligent Supervision**
**[Against Defendants Agana Archdiocese, BSA, Aloha Council, and DOES 1 – 50]**

89.  Plaintiff re-alleges and incorporates by reference paragraphs 1 through 88 of this Complaint as if fully set forth herein.

90.  Defendants Agana Archdiocese, BSA, Aloha Council, and DOES 1 - 50 (collectively "Defendants" as alleged in this cause of action) had a duty to provide reasonable supervision of both Brouillard and the minor child, S.T.J.; to use reasonable care in investigating Brouillard; and to provide adequate warning to S.T.J.'s family, and to families of other children who were entrusted to Brouillard, of Brouillard's sexually abusive and exploitative propensities and unfitness.

91.  Defendants, by and through their agents, servants and employees, knew or reasonably should have known of Brouillard's sexually abusive and exploitative propensities and/or that Brouillard was an unfit agent. Despite such knowledge, Defendants negligently failed to supervise Brouillard in his position of trust and authority as a parish priest and / or scoutmaster, where he was able to commit the wrongful acts against S.T.J. alleged herein. Defendants failed to provide reasonable supervision of Brouillard, failed to use reasonable care in investigating Brouillard, and failed to provide adequate warning to S.T.J.'s family regarding Brouillard's sexually abusive and exploitative propensities and unfitness. Defendants further failed to take reasonable measures to prevent future sexual abuse.

92.  As a direct and proximate result of the Defendants' above – described conduct, S.T.J. has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and have incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

21

1    93. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or

2    fraud, entitling S.T.J. to exemplary and punitive damages.

3    **VIII.**
     **FIFTH CAUSE OF ACTION**

4    **Negligent Hiring And Retention**

5    **[Against Defendants Agana Archdiocese, BSA, Aloha Council, and DOES 1 - 50]**

6    94. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 93 of this Complaint as

7    if fully set forth herein.

8    95. Defendants Agana Archdiocese, BSA, Aloha Council, and DOES 1 - 50 (collectively

9    "Defendants" as alleged in this cause of action) had a duty not to hire, retain, or engage in the services of

10   Brouillard in light of his sexually abusive and exploitative propensities.

11   96. Defendants, by and through their agents, servants and employees, knew or reasonably should

12   have known of Brouillard's sexually abusive and exploitative propensities and / or that Brouillard was an

13   unfit agent. Despite such knowledge and / or an opportunity to learn of Brouillard's misconduct, Defendants

14   negligently hired, retained, or engage in the services of Brouillard in his position of trust and authority as a

15   parish priest and / or a scoutmaster, where he was able to commit the wrongful acts against S.T.J. alleged

16   herein. Defendants failed to properly evaluate Brouillard in advance by failing to conduct necessary

17   screening; failed to properly evaluate Brouillard's conduct and performance as an employee of, or provider of

18   services to Defendants; and failed to exercise the due diligence incumbent upon employers to investigate

19   employee misconduct, or to take appropriate disciplinary action, including immediate termination and

20   reporting and referral of Brouillard's sexual abuse to appropriate authorities. Defendants negligently

21   continued to retain Brouillard in service as a Catholic priest and / or scoutmaster, working or providing

22   services for Defendants, which enabled him to continue engaging in the sexually abusive and predatory

23   behavior described herein.

24   97. As a direct and proximate result of the Defendants' above – described conduct, S.T.J. has

25   suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical

26   manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of

27   enjoyment of life; and have incurred and / or will continue to incur expenses for medical and psychological

28   treatment, therapy and counseling.

22

1    98. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or

2    fraud, entitling S.T.J. to exemplary and punitive damages.

## IX.
## SIXTH CAUSE OF ACTION

**Breach of Fiduciary Duty And / Or Confidential Relationship**
**[Against All Defendants]**

6    99. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 98 of this Complaint as

7    if fully set forth herein.

8    100. By holding Brouillard out as a qualified priest and a person of stature and integrity within the

9    Catholic Archdiocese, Defendants Agana Archdiocese and DOES 1 - 50, together with Brouillard himself,

10   invited, counseled, encouraged and induced the Catholic community of Guam, including parents or

11   guardians of children, and particularly parents or guardians of children serving as altar boys and children

12   eligible to serve as altar boys, to have trust and confidence in the Agana Archdiocese and its priests and to

13   entrust their children to the company of priests and specifically to Brouillard, including allowing their

14   children to be alone with Brouillard without supervision, and to spend nights at a church facility where

15   Brouillard resided.  Through such actions, Defendants collectively created and entered into a fiduciary and /

16   or confidential relationship with its parishioners, including Catholic parents or guardians and their children,

17   and in particular, children who provided services to the Agana Archdiocese that included serving as altar

18   boys.  Accordingly, Defendants collectively created and entered into a fiduciary and / or confidential

19   relationship specifically with the minor child S.T.J.

20   101. By holding Brouillard out as a safe, trustworthy and highly ethical scoutmaster with integrity,

21   Defendants Agana Archdiocese, BSA, Aloha Council and DOES 1 - 50, together with Brouillard himself,

22   invited, counseled, encouraged and induced the community of Guam, including parents or guardians of

23   children to join the Boy Scouts; and particularly as to parents or guardians of children who were already paid

24   members of the BSA and Aloha Council, to have trust and confidence in the BSA, Aloha Council and its

25   Scout leaders, employees, servants, officers, volunteers, and / or agents, and to entrust their children to the

26   company of scoutmasters and specifically to Brouillard, including allowing their children to be alone with

27   Brouillard without supervision, and to camp out over night at BSA and Aloha Council activities. Defendants

28   Agana Archdiocese, BSA, and Aloha Council actively exploited their reputation of the Catholic Church for

23

the purpose of encouraging membership of the Boy Scouts, thereby facilitating the availability of minor boys to pedophilic priests. In this way, Defendants Agana Archdiocese, BSA, and Aloha Council, maintained a symbiotic relationship by which each recruited minors for their sexual pleasures. Through such actions, Defendants collectively created and entered into a fiduciary and / or confidential relationship with its members, including parents or guardians and their children, and in particular, children who were members of the BSA and Aloha Council. Accordingly, Defendants collectively created and entered into a fiduciary and / or confidential relationship specifically with the minor child S.T.J.

102. Through such fiduciary and / or confidential relationship, Defendants collectively caused parents or guardians to entrust their children to members of the Agana Archdiocese serving both in their role as priests and scoutmasters, and specifically entrusted their children to Brouillard, including the parents of S.T.J., which resulted in S.T.J. serving as an altar boy and spending one or more nights at a church facility where Brouillard resided and / or joining and becoming a member of the BSA and its Aloha Council and participating in its activities, resulting in the subject acts of sexual abuse described herein.

103. Defendants collectively breached their fiduciary and / or confidential relationship with the minor child S.T.J. by violating the trust and confidence placed in them by parishioners and / or members, and specifically by the minor child S.T.J., and by engaging in the wrongful acts described in this Complaint.

104. As a direct and proximate result of the Defendants' above – described conduct, S.T.J. has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and have incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

105. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling S.T.J. to exemplary and punitive damages.

//
//
//
//
//

# X.
## REQUEST FOR RELIEF

WHEREFORE, Plaintiff S.T.J. requests judgment against all Defendants on all counts as follows:

1. For all general, special, exemplary and punitive damages, as allowed by law in a sum to be proven at trial and in an amount not less than $10,000,000;

2. For costs and fees incurred herein;

3. Attorneys' fees, as permitted by law; and

4. For other such and further relief as the Court may deem just and proper.

# XI.
## DEMAND FOR JURY TRIAL

Plaintiff S.T.J., through his counsel, David J. Lujan, hereby demands a jury trial of six (6) in the above-entitled action, pursuant to Fed. R. Civ. Proc. 48(a).

Respectfully submitted this 3rd day of January, 2018.

By: _____
DAVID J. LUJAN
*Attorney for Plaintiff,*
*S.T.J.*

## <u>VERIFICATION</u>

S.T.J., declares and states that he is the PLAINTIFF in the foregoing COMPLAINT; that he has read said VERIFIED COMPLAINT FOR DAMAGES and knows the contents thereof to be true and correct, except as to the matters which may have been stated upon his information and belief; and as to those matters, he believes them to be true.

I declare, under penalty of perjury, this 3rd day of January, 2018, that the foregoing is true and correct to the best of my knowledge.

_____
S.T.J.

My name is Father Louis Brouillard. I am a retired Roman Catholic priest. I reside at 525 9th St. Southwest, apartment #2, Pine City Minnesota. Today is October 3rd, 2016. I am making this video at my residence and do so of my own free will.

While on Guam and the surrounding area, I helped many and assisted with numerous projects for the good of the people. During this time, I also may have offended some people there and wish to explain.

I am making this video to reach out to the parishioners of the Archdiocese of Guam, and anyone I may have harmed, to ask forgiveness for actions done by me many years ago.

I served the diocese of Guam in the 1940s through the 1970s and held many positions in the church. Two of the jobs I had were managing the Boy Scouts, where I served as President for the Scouts on Guam, my church was the Santa Teresita Church in Mangilao, and one of the other jobs was teaching sexual education to the boys in the parish.

Looking back now, I realize that I crossed the line with some of my actions and relationships with the boys.

During some of the sex education talks, while at Santa Teresita, I did touch the penises of some of the boys and some of the boys did perform oral sex on me. Some of these incidents took place in Mangilao at the rectory of the Santa Teresita Church. Because of the many years that have passed, I do not remember the exact dates and times or the names of the boys involved. There may have been 20 or more boys involved. Other locations where the sexual contact may have happened would be at San Vicente and Father Duenas Memorial Schools.

At that time, I did believe that the boys enjoyed the sexual contact and I also had self gratification as well.

I have come to learn the name of one of the boys I had sexual contact with at the Santa Teresita rectory. His name is Leo Tudela he is from the Island of Saipan. I apologize to you Leo and the rest of the boys that I may have harmed. I regret

# EXHIBIT 1

with all my heart any wrong I did to them. I pray for all the boys I may have harmed and ask for their forgiveness and for forgiveness from God.

While in Guam my actions were discussed and confessed to area priests as well as Bishop Apollinaris Baumgartner who had approached me to talk about the situation. I was told to try to do better and say prayers as a penance.

I believe the Catholic Church should be honest and truthful regarding what happened on Guam during my time there.

Again, I ask forgiveness from God and from anyone I have offended while serving in Guam. May God bless you all and I ask for your prayers.

I, Louis Brouillard, having read the foregoing approve and acknowledge my statement, the truthfulness of the claims made herein and that I have made this statement completely of my own free will in an effort to atone for my sexual transgressions involving children from Guam and Saipan and to promote healing and closure for the victims of those transgressions.

_Rev. Louis Brouillard_    10/03/2016

LOUIS BROUILLARD

525 9th Street SW

Apartment 2

Pine City, MN 55063



2017 CX-3
EXPIRES
$17,995
MARCH MONEY MADNESS
SPIN TO WIN UP TO $1,000 IN CASH!
TRIPLE J MAZDA • Tel. 649-3673 • Fax: 649-5661 • www.TRIPLEJGUAM.com
TRIPLE J

https://www.postguam.com/news/local/boy-scouts-says-it-banned-priest-who-admitted-he-molested/article_9b1ad4c4-ffb9-11e6-821a-7f7ce882b274.html

## Boy Scouts says it banned priest who admitted he molested Guam kids

Neil Pang | The Guam Daily Post   Mar 5, 2017 Updated Mar 8, 2017



The Boy Scouts of America building in Upper Tumon on Feb. 28. David Castro/The Guam Daily Post

The Boy Scouts of America banned from the scouting movement a priest accused of pedophilia who faces multiple sex-abuse cases in Guam, according to the head of the organization's Aloha Council.

The council, which has jurisdiction over the Boys Scouts' Guam chapter, was commenting on recent court cases filed in federal court against Louis Brouillard, a former Guam priest and former Boy Scouts troop master.

**Lawsuits: Brouillard used local Boy Scouts chapter to prey on children**

Fifteen claims of sexual abuse of children filed recently allege that Brouillard, while on Guam, used his position in the local Boy Scouts chapter to prey on young boys in the 1970s.

"The behavior included in these allegations is abhorrent and runs counter to everything for which the Boy Scouts of America stands," said Jeff Sulzbach, chief executive officer of the Boy Scouts of America Aloha Council. "Upon learning of these reports, we took immediate action to preclude this individual from any further participation in the scouting program."

Though Sulzbach couldn't say when exactly the Boy Scouts became aware of the reports of Brouillard's sexual abuse of children on Guam, he said it was possible the organization didn't take action against the priest until sometime after the 1970s.

# EXHIBIT 2

https://www.postguam.com/news/local/boy-scouts-says-it-banned-priest-who-admitted-he-molested/article_9b1ad4c4-ffb9-11e6-821a-7f7ce882b274.html

"Between 1968 and 1974, the Boy Scouts of Guam operated under their own council," Sulzbach said. "In 1974, the Guam chapter came under the jurisdiction of the Aloha Council."

According to BishopAccountability.org, Brouillard served on Guam from 1948 to 1981 at various parishes around the island.

### Forced to swim naked to earn merit badge

Those who have accused Brouillard say he abused boys both at his homes and during hiking and camping outings as part of activities with the Guam Boy Scouts.

In the most recent case filed, Morgan Paul states Brouillard used the guise of awarding merit badges to the boys to force him and others to swim naked.

The lawsuit states Paul felt like an outcast and feared he might not earn his merit badges if he did not cooperate with Brouillard, so he felt pressured to swim naked. In order to earn the swimming merit badge, Paul was required to float and tread water for 15 minutes. He claims he would be taken to the deep side of the river and as he floated, Brouillard would grope at his private part and fondle him. Paul said he tried to resist, but Brouillard kept grabbing at him.

### Scouts CEO: More is being done now to protect kids

"Nothing is more important than the safety of our youth members and we are profoundly saddened when anyone uses their position to harm children," Sulzbach said. "The Boy Scouts of America extends its deepest sympathies to any person who has been hurt by child sexual abuse. Any instance of child victimization or abuse is intolerable and unacceptable."

Sulzbach added that increased safety measures taken by the Boy Scouts of America include a comprehensive program of education on the subject, the chartered organization leader selection process, criminal background and other checks, policies and procedures to serve as barriers to abuse and the prompt mandatory reporting of any allegation or suspicion of abuse.

### Lujan says he does plan to sue the Boy Scouts

Brouillard admitted to abusing boys during his time on Guam in a letter and video statement released in October 2016 and said that others in the church, including Archbishop Apollinaris Baumgartner, knew about the abuse, but only told Brouillard to give penance and pray.

David Lujan, the attorney who represents the plaintiffs in all the cases against Brouillard and the Archdiocese of Agana, said he does intend to sue the Boy Scouts of America. Sulzbach said he hadn't heard of any Guam cases against the Boy Scouts.

While no Guam lawsuits are yet known of, the Boy Scouts of America hasn't been immune to suits about sexual abuse of children.

According to the Los Angeles Times, such cases have even resulted in settlements as recently as 2010 when a plaintiff, Oregon resident Kerry Lewis, won a $20 million jury verdict against the Boy Scouts of America for abuse that occurred in the 1980s.

### Neil Pang
English teacher turned reporter covering GHURA, military affairs, church/religion, mass transit, parks and rec and more.

https://www.postguam.com/news/local/boy-scouts-says-it-banned-priest-who-admitted-he-molested/article_9b1ad4c4-ffb9-11e6-821a-7f7ce882b274.html